## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re

**CONNOLLY GEANEY ABLITT &
WILLARD, P.C.,**                                    Chapter 7
    Debtor                                          Case No. 14-14164 –JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**STEWART GROSSMAN, CHAPTER 7
TRUSTEE OF CONNOLLY
GEANEY ABLITT & WILLARD, P.C.,**
    Plaintiff

v.                                                  Adv. Pro. 16-01163

**DURHAM COMMERCIAL CAPITAL
CORP. and MAASAI HOLDINGS, LLC,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court for determination is the Motion for Summary

Judgment filed by Maasai Holdings, LLC ("Maasai"). In connection with the motion, the

Court must determine an issue of law as to whether Maasai's prepetition lien extends to

any recoveries obtained by Stewart Grossman, the Chapter 7 Trustee (the "Trustee" or

the "Plaintiff"), of the estate of Connolly Geaney Ablitt & Willard, P.C. (the "Debtor").

The Plaintiff sets forth four counts in his Complaint, namely  Count I under 11 U.S.C. §

1

548(a)(1) through which he seeks avoidance of transfers and the entry of a judgment against Durham Commercial Capital Corp. ("Durham") and Maasai with respect to "Unfactored Collections, Cash Transfer and Assigned Accounts," less the "Rebate," defined in the Complaint, in the amount of $1,057,137.75;  Count II under 11 U.S.C. § 544(b) and Mass. Gen. Laws ch. 109, §§ 5 and 6 through which he seeks avoidance of transfers and the entry of a judgment against Durham and Maasai with respect to "Unfactored Collections, Cash Transfer and Assigned Accounts," less the "Rebate," defined in the Complaint, in the  amount of $1,057,137.75; Count III under 11 U.S.C. § 550 through which he seeks entry of judgment against Durham and Maasai, as initial transferees of "Unfactored Collections, Cash Transfer and Assigned Accounts" in the amount of $1,057,137.75 against Durham and in the amount of $1,024,799.48 against Maasai; and Count IV under Mass. Gen. Laws ch. 93A, §§ 2 and 11 through which he seeks the entry of judgment against Durham and Maasai in an amount no less than $1,057,137.75, trebled, plus interest from the date the "DCR Transfers," as defined in the Complaint, were made, and attorneys' fees.

On February 22, 2018, the Plaintiff filed a motion to dismiss Count V of his Complaint for Equitable Subordination against Maasai.  The Court granted the motion on February 26, 2018.

The issues presented by the Motion for Summary Judgment are whether there are material facts in dispute, and, in particular, whether Maasai's prepetition lien attaches to avoidance power recoveries or to any recovery by the Trustee with respect to his claim under Mass. Gen. Laws ch. 93A, §§ 2 and 11.

2

The Court heard the summary judgment motion on February 27, 2018.  At the conclusion of the hearing, the Court directed Maasai to file a supplemental brief regarding the avoidance power recovery issue by March 9, 2018 and the Plaintiff to file a response by March 16, 2018.  After obtaining a brief extension of time to file briefs, both parties complied with this Court's order.

For the reasons set forth below, the Court shall enter an order denying Maasai's Motion for Summary Judgment as the Court concludes there are material facts in dispute. In addition, the Court rejects Maasai's contention that the Trustee's pursuit of fraudulent transfer causes of action against it and Durham are an exercise in futility because the receivables the Debtor allegedly transferred and which the Trustee seeks to recover would be paid, if recovered, to Maasai in partial satisfaction of its prepetition secured claim.  The Court concludes, as the Trustee argued, that Maasai's prepetition lien does not attach to avoidance power recoveries or to any recovery under Mass. Gen. Laws ch. 93A.

## II. FACTS

For purposes of resolving the issue identified above, the Court accepts Maasai's statement of undisputed facts gleaned from the Plaintiff's Complaint which it set forth in its Supplemental Memorandum of Law in Support of its Motion for Summary Judgment. In his Response to Maasai's brief, the Trustee did not dispute the facts set forth in Maasai's supplemental brief.  The Court paraphrases those facts below.  That said, Maasai also references facts in its brief that it only mentioned in passing in its initial submissions in support of its Motion for Summary Judgment, in particular, a mortgage securing an

3

obligation that was not owed by the Debtor that was referenced in an Amended and Restated Forbearance Agreement, the interpretation of which the parties dispute.[1]

On or about December 21, 2007 Ablitt & Charlton P.C. (a predecessor to the Debtor) executed and delivered to Sovereign Bank a certain promissory note (the "Note" or the "DCR Note") in the principal amount of $1,500,000.00. In connection with the transaction, the Debtor pledged as collateral, inter alia, all of the Debtor's present and future accounts receivable. On or about September 14, 2010, Sovereign Bank, as the seller, and DCR Mortgage IV Sub I, LLC ("DCR Sub I"), as the purchaser, entered into an Asset Sale Agreement, whereby DCR Sub I purchased all of Sovereign Bank's right, title, and interest in outstanding obligations owed by the Debtor. On or about January 28, 2013, DCR Sub I, as the assignor, and DCR Mortgage IV Sub III, LLC ("DCR Sub III"), as the assignee, entered into an "Assignment of Loan Documents and Assumption Agreement," whereby DCR Sub I assigned to DCR Sub III all of DCR Sub I's right, title, and interest in outstanding obligations owing by the Debtor.

On or about February 7, 2013, DCR Sub III ("DCR"), as the seller, and Maasai as the purchaser, entered into a Loan Sale Contract, whereby DCR sold to Maasai all of its rights, title, and interest in outstanding obligations owing by the Debtor under the various loan documents (the "Loan Documents"). The loan was secured by a first position lien covering all assets of the Debtor pursuant to UCC-1 Financing Statement #

---

[1] At the hearing, the Plaintiff's attorney complained that Maasai's factual and legal theories are constantly shifting, pointing, in particular, to its recent reliance on the Amended and Restated Forbearance Agreement.

200705764210 recorded December 21, 2007 and assigned to Maasai by UCC-3 #
201312192320; and UCC-1 Financing Statement # 201110049970 recorded June 21, 2011
and assigned to Maasai by UCC-3 # 201312192230. The collateral securing the debt
expressly included all "General Intangibles," "including, without limitation, all choses in
action, causes of action," and "[a]ll products and proceeds of the foregoing . . ."[2]

Maasai also sets forth in its brief the following:  1) the Debtor was in default of its
obligations to its secured lenders and had absolutely no ability to obtain financing from
any source; 2) the Debtor's secured lender had accelerated both the $1.5 million revolving
credit facility debt and a $4 million mortgage obligation, each of which were cross-
defaulted and cross-collateralized; 3) Maasai stepped in to purchase or  resolve these
debts in default as part of the Note purchased from DCR and "[t]hereafter, in addition to

---

[2] Prior to the purchase of the DCR Note, the Debtor and Durham, on November 7, 2012,
entered into a financing arrangement (the "Factoring Agreement"), captioned
"Nonrecourse Receivables Purchase Contract and Security Agreement." According to the
Plaintiff in his Complaint,

> Under the terms of the Factoring Agreement, the Debtor agreed to offer its
> accounts to Durham for sale. The Debtor agreed to pay Durham a 3.25% fee
> (calculated off of the face amount of the receivable), plus a 1.625% fee for
> each 15-day period that the account is delinquent beyond an initial 30 days.
> An additional 1% fee was paid to Durham as a "commission." Although the
> sale of accounts to Durham were termed "nonrecourse", the Debtor
> guaranteed that the accounts represented bona fide obligations of its client,
> and Durham retained a 35% holdback on the purchase price against which,
> according to the Factoring Agreement, Durham could apply to delinquent
> accounts. The Factoring Agreement further granted a security interest to
> Durham in all of the Debtor's accounts, whether or not factored, to secure
> the Debtor's obligations under the Factoring Agreement.

Complaint ¶ 17.

5

access to $3 million in new capital and a two-year debt forbearance on the $1.5 million

the Note, the Debtor was also relieved of a $4 million guaranty obligation secured by a

lien on all of the Debtor's assets" pursuant to an Amended and Restated Forbearance

Agreement.  Maasai explains:

> The Trustee challenged the value of the mortgage release because the
> mortgage was not in the Debtor's name but rather in an entity wholly-
> owned by Debtor principal Steven Ablitt ("Ablitt"), SAA Group, LLC
> ("SAA"). However, the Debtor had guaranteed SAA's mortgage obligation
> and pledged all of its assets as collateral. The Debtor's assets were relieved
> of the $4 million guaranty in connection with Maasai's debt purchase. Thus
> $5.5 million in debt was lifted off the Debtor's receivables so it could use
> these receivables for working capital. Even assuming the facts as alleged,
> the Debtor received at least reasonably equivalent value for the transfers at
> issue.
>
> Further the Trustee admits in his complaint that the Debtor transferred
> accounts receivable to Durham, not cash. Without the release of security in
> the amount of $5.5 million Debtor would never have been able to transfer
> the receivables in the first place. All of the receivables transferred to
> Durham were subject to DCR's first lien at the time of transfer.

According to Maasai, the revolving line of credit amount under the loan agreement

was $1,493,612.61, plus an additional $263,964.82 disbursed at closing, for a total loan

amount of $1,757,577.43.  It adds that additional sums were then disbursed to the Debtor.

For example, according to Maasai, Durham advanced: $1,215,185.47 to the Debtors in

February 2013;[3] $659,543.18 in March 2013; $877,217.30 in April 2013; and $1,057,003.11

in May 2013.  Maasai maintains that these advances continued through June of 2014.  It

further states that as a result of the Debtor's breach of the Loan Documents, it became

---

[3] According to the Plaintiff, this representation is false because the claim includes
$626,699.15 in "advances" booked on February 7, 2013 that were never, in fact, advanced
to the Debtor but were instead credited in payment of the DCR Note for Maasai's benefit.

6

entitled to collect from the Debtor's clients all monies owing to the Debtor for provision

of legal services.  It contends that the total amount due to it under Loan Documents as of

the date the Debtor commenced its bankruptcy case was $3,006,493.72, together with such

interest, fees and costs that continue to accrue after the petition date as allowable under

applicable law and the Loan Documents.

## III. POSITIONS OF THE PARTIES

A. <u>Maasai</u>

Maasai maintains that it is not disputed that all of the receivables allegedly

fraudulently transferred by the Debtor to Durham and/or Maasai were subject to DCR's

lien at the time of transfer and that Maasai holds a valid, perfected security interest in all

of the Debtor's assets as successor to DCR.  That security interest, it contends, expressly

includes a lien on "causes of action" and all "products and proceeds" thereof.  Thus, it

asserts the only issue is whether that prepetition lien attaches to any recovery the Trustee

might realize under his fraudulent transfer causes of action or cause of action under Mass.

Gen. Laws ch. 93A.

Maasai references 11 U.S.C. § 552(a) which provides, as a general rule, that

property acquired by the estate or by the debtor postpetition is not subject to a prepetition

lien, except as provided in § 522(b) which allows prepetition security interests to attach

to postpetition property if the collateral which produces the proceeds was acquired by

the debtor prior to the commencement of the case.  It adds, citing, inter alia, <u>Butner v.

United States</u>, 440 U.S. 48, 55 (1979), that whether a creditor has a security interest in the

proceeds depends upon state law.  Recognizing what it contends is a split of authority, it

maintains that the "better reasoned" decisions support its position.  Because it has a valid

lien encompassing causes of action and their proceeds, it argues, citing Barber v. McCord

Auto Supply (In re Pearson Indus.), 178 B.R. 753 (Bankr. C.D. Ill. 1995), and In re Figearo,

79 B.R. 914 (Bankr. D. Nev. 1987), that "[t]here is no rational basis to cut off the application

of those lien rights to the Trustee's causes of action or their proceeds." Maasai concludes:

> The Trustee should not be able to get around the enforceability of Maasai's
> lien simply because the causes of action have been brought post-petition.
> The causes of action and their potential proceeds are not postpetition assets
> under § 552. They continue to be Maasai's collateral, subject to its perfected
> lien.
>
> Accordingly, allowing this litigation to continue is pointless because any
> recovery the Trustee might realize from the litigation would have to be paid
> to Maasai in partial satisfaction of its secured claim. The lawsuit should be
> dismissed.

Maasai also argues in its brief that the Trustee cannot succeed in proving that the

Debtor did not receive reasonably equivalent value for the transfers.  It contends that the

Debtor received two components of value, even assuming the Debtor "paid" for the debt

purchase as alleged by the Trustee in his Complaint, namely 1) the Debtor had a $1.5

million secured debt that was in default, accelerated and cross-defaulted, which was

effectively "taken off its books" by the Forbearance Agreement with Maasai, because the

Debtor was relieved of the immediate obligation to satisfy that debt in default, thereafter

enjoying a two-year breathing spell under the Forbearance Agreement that effectively

became permanent when the Debtor failed to satisfy any of the obligations to Maasai

under the DCR Note and filed for bankruptcy protection; and 2) pursuant to the

Amended and Restated Forbearance Agreement between and among SAA Group, LLC,

a related entity controlled by Steven A. Ablitt that owned the Debtor's office space; the

Debtor; Steven A. Ablitt; and DCR, which agreement was entered into in connection with

the Maasai's purchase of the DCR Note, "the seller [i.e., DCR] expressly agreed to release

a $4 million-dollar mortgage obligation against SAA."

B. The Plaintiff

The Plaintiff contends that Maasai "disregards all contemporary legal authority

holding that a prepetition lien does not attach to avoidance recoveries, instead relying

entirely on outdated and discredited decisional authority." He contends that, not only

does Maasai's lien not attach to avoidance power recoveries, it also does not attach to any

recoveries under Mass. Gen. Laws ch. 93A. Relying upon Official Comm. of Unsecured

Creditors v. UMB Bank, N.A. (In re Residential Capital, LLC), 497 B.R. 403, 414-15 (Bankr.

S.D.N.Y. 2013), the Plaintiff maintains that it is "well-settled" that an all-asset prepetition

lien does not attach to a bankruptcy trustee's recoveries obtained through the exercise his

or her avoidance powers. The Trustee explains that, except as provided in § 552(b), §

552(a) provides that property acquired postpetition is not subject to a prepetition lien.

Subsection (b), however, limits its scope to postpetition proceeds of the debtor's

prepetition property, and expressly excepts the exercise of the trustee's avoidance powers

under § 544. He argues:

> Fraudulent transfer recoveries do not fall within the scope of Section 552(b)
> for two principal reasons. First, "[a]voidance actions, including those
> arising under state law, can only be brought by the trustee after the petition
> is filed under the trustee's section [544(b)] rights. These claims, therefore,
> arise post-petition and must be considered after-acquired property
> belonging to the estate." 497 B.R. at 414. Second, because a debtor does not
> own the right to prosecute a fraudulent transfer claim under applicable

9

state law (such claim belonging exclusively to creditors), the debtor could not have collaterally assigned that right prepetition. Thus, a secured creditor's prepetition lien could not have attached to any fraudulent transfer claim. Id.

The Plaintiff points to additional authority, referencing Rund v. Kirkland (In re EPD Inv. Co., LLC), No. 2:12–ap–02424, 2018 WL 947636, at *9 (Bankr. C.D. Cal. Feb. 17, 2018) ("Logically, it is difficult to understand how an avoidance power action that springs into being with the commencement of a bankruptcy case could be the proceed of *any* form of collateral") (emphasis in original); In re Roselli Moving & Storage Corp., 568 B.R. 592, 595 (Bankr. E.D.N.Y. 2017) (prepetition lien does not attach to estate's chapter 5 causes of action); Arlington Capital LLC v. Bainton McCarthy LLC, 534 B.R. 337, 343-45 (N.D. Ind. 2015), *vacated on other grounds*, 828 F. 3d 692 (7th Cir. 2016) (§363(n) damages not subject to prepetition lien for same reason that avoidance recoveries are not subject to prepetition lien); Jahn v. Genesis Merchant Partners, LP (In re U.S. Ins. Grp. LLC), 451 B.R. 437, 443 (Bankr. E.D. Tenn. 2011) ("trustee's [preference] recovery is on behalf of the estate, not secured creditors . . . [a]lthough the defendant claims a security interest in the proceeds of the avoidance action, a prepetition security interest cannot attach to collateral that does not come into being until a bankruptcy petition is filed"). *See also* 5 Collier on Bankruptcy ¶ 552.02[5][d] (Richard Levin & Henry J. Sommer eds., 16th ed.). *Contra* In re Figearo, 79 B.R. 914, 918 (Bankr. D. Nev. 1987) (holding that property recovered postpetition by a bankruptcy trustee that had been fraudulently transferred prepetition can be subject to the prepetition lien of a secured creditor if such lien had encompassed the property prior to the transfer because "the avoidance and recovery of property by a bankruptcy trustee

10

is not equivalent to a postpetition acquisition of property by the estate as contemplated by [Section 552(a)]," but rather the recovery of property that became part of the bankruptcy estate at commencement pursuant to Section 541(a)(3)). The Plaintiff contends that the decision in Figearo has been "repeatedly rejected," citing In re EPD Inv. Co., LLC, 2018 WL 947636, at *10, and In re Residential Capital, 497 B.R. at 415. The Plaintiff concludes that the argument that property recovered by a trustee pursuant to avoidance powers is already part of the bankruptcy estate pursuant to § 541 subject to the secured creditor's lien "is a fiction which ignores the plain meaning of Section 552(a) and related avoidance provisions."

The Plaintiff also argues that Maasai's prepetition lien does not attach to the Ch. 93A claim. The Plaintiff recognizes that his Ch. 93A claim against Durham and Maasai is a prepetition cause of action that belonged to the Debtor, adding that

> [t]he gravamen of the Trustee's claim is that, on and before February 7, 2013, Durham and Maasai induced the Debtor to make transfers for the purported purpose of purchasing the DCR Note *for the Debtor's benefit* when, in fact, the intention was to use the DCR Note to acquire a first lien position and assert *claims against the Debtor*. *See* Complaint, ¶¶ 43-47. Such allegations sound in fraud and, therefore, give rise to a commercial tort claim that must be identified in the security agreement in order to become collateralized.

The Plaintiff posits that Maasai's lien does not attach to any recovery because pursuant to Weiler v. PortfolioScope, Inc., 469 Mass. 75, 81 n.16 (2014), and Mass. Gen. Laws ch. 106, §§ 9-102(a)(13)(A), 9-108(e)(1), and 9-204(b)(2), "[i]n order to acquire a security interest in a commercial tort claim, Massachusetts law requires that such claim must "be named expressly in the security agreement and must be in existence at the time the

security agreement is created." *See* In re Residential Capital, LLC, 497 B.R. at 415

(construing New York's version of the Uniform Commercial Code).

Finally, the Plaintiff rejects Maasai's "new theory" regarding reasonably

equivalent value owing, in part, to the absence of supporting evidence. The Plaintiff

observes:

> [I]n its Supplemental Memorandum, Maasai attaches a certain Amended
> and Restated Forbearance Agreement dated as of February 7, 2013, by and
> among the Debtor, DCR and SAA Group, LLC (the owner of the real estate)
> ("Forbearance Agreement"). The recitals and terms of the Forbearance
> Agreement make clear that the Debtor had indeed guaranteed the $4
> million mortgage and, through cross-collateralization agreements, had
> secured that guaranty with an all asset security interest. Thus, prior to
> February 7, 2013, DCR had a security interest in the Debtor's assets to secure
> both (i) the $1.5 million line of credit note (the so-called "DCR Note" of
> which the Debtor was the primary obligor) and (ii) the Debtor's guaranty
> of the $4 million real estate mortgage (of which the Debtor's affiliate, SAA
> Group, LLC, was the primary obligor and mortgagor). The Forbearance
> Agreement however makes clear that the Debtor is not released of its
> guaranty obligation; instead, the guaranty obligation is merely converted
> from a secured guaranty to an unsecured guaranty. Forbearance
> Agreement, Par. 10. The Debtor is still independently liable for all real estate
> mortgage obligations. Indeed, the Forbearance Agreement expressly
> provides that "[the Debtor] hereby reaffirms the full force and effectiveness
> of the AB Guaranty and acknowledges that the AB Guaranty continues to
> guaranty all SAA Obligations . . ., and that [the Debtor]'s obligations under
> the AB Guaranty are separate and distinct from those of SAA." Id., Par. 22.
> Thus, the Debtor was not released from its guaranty obligations as Maasai
> had asserted in its Reply; therefore, the major premise for Maasai's claim
> that the Debtor received a $4 million benefit from the transfers is false, and
> Maasai's new argument fails.

The Plaintiff also rejects Maasai's "access to capital" argument, stating because the

Debtor's accounts remained collateral for the $1.5 million DCR Note purchased by

Maasai, the Debtor's sole access to capital was through Durham and under the Factoring

Agreement, the Debtor already paid an upfront origination fee and had to pay a fee for

each factored receivable.  Thus, according to the Plaintiff, even if Durham subsequently

provided $3 million in capital to the Debtor as Durham alleges, each subsequent advance

made to the Debtor was made specifically in exchange for invoices worth more than the

advance exactly as contemplated by the Factoring Agreement.  The Plaintiff concludes

that Maasai was unable to assign a monetary value to the benefit of purchasing

receivables on a case-by-case basis, rejecting any notion that Durham provided $3 million

of capital in exchange for the sum of $1,024,799.18, the amount of the constructive

fraudulent transfer.

## IV. DISCUSSION

A. Summary Judgment Standard

According to the United States Bankruptcy Appellate Panel of the First Circuit in

Raso v. Fahey (In re Fahey), 482 B.R. 678 (B.A.P. 1st Cir. 2012),

> "In bankruptcy, summary judgment is governed in the first instance by
> Bankruptcy Rule 7056." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760,
> 762 (1st Cir. 1994); *see also* Soto–Rios v. Banco Popular de Puerto Rico, 662
> F.3d 112, 115 (1st Cir. 2011). "By its express terms, the rule incorporates into
> bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil
> Procedure." In re Varrasso, 37 F.3d at 762 (citations omitted); *see also* Soto–
> Rios v. Banco Popular de Puerto Rico, 662 F.3d at 115; Fed. R. Bankr. P. 7056;
> Fed. R. Civ. P. 56.6 "It is apodictic that summary judgment should be
> bestowed only when no genuine issue of material fact exists and the movant
> has successfully demonstrated an entitlement to judgment as a matter of
> law." In re Varrasso, 37 F.3d at 763 (citing Fed. R. Civ. P. 56(c)). "As to issues
> on which the nonmovant has the burden of proof, the movant need do no
> more than aver an absence of evidence to support the nonmoving party's
> case." Id. at 763, n.1 (citation and internal quotations omitted). "The burden
> of production then shifts to the nonmovant, who, to avoid summary
> judgment, must establish the existence of at least one question of fact that
> is both genuine and material." Id. (citations and internal quotations
> omitted). The "mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

<u>In re Fahey</u>, 482 B.R. at 686–87. *See also* <u>In re Spenlinhauer</u>, 573 B.R. 343, 355–56 (Bankr.

D. Mass. 2017).[4]

    B. <u>Applicable Law</u>

The following synopsis of the applicable law from a treatise helps clarify the

positions of the parties.

    Assuming that the security interest is sufficient under applicable state law to encompass avoidance claims, the analysis may be facilitated by bearing in mind that property is a bundle of rights, which contains discrete

---

[4] Massachusetts Local Bankruptcy Rule 7056–1 incorporates Local Rule 56.1 of the United States District Court for the District of Massachusetts. It provides the following:

    Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties. Unless the court orders otherwise, the moving party may file a reply within 14 days after the response is served.

D. Mass. LR 56.1.

elements, i.e., sticks in the bundle. The discrete rights dealt with relative to the interaction between avoidance claims and § 552 are the:

> 1. Right to the avoidance claim asserted by the bankruptcy trustee,
> 2. Rights to the property subject to the avoidance claim, and
> 3. Rights to the proceeds of the avoidance claim.

Most, if not all, courts agree that that a secured creditor who holds a security interest in property that is subject to avoidance by a trustee action has no interest in the trustee's avoidance claim.

Many courts stop the analysis and [sic] this point and hold that if the creditor lacks an interest in the avoidance claim, then it also lacks an interest in the proceeds attributable to the property in which it held a security interest. A standard bankruptcy treatise [*Colliers*] has also taken this position, stating that since the fraudulent transfer and anti-preference claims are for the benefit of the bankruptcy estate "it is difficult to see how such recoveries can be other than "after acquired property" within the meaning of section 552(a), rather than proceeds of prepetition collateral under section 552(b)(1)." This language has been quoted in cases.

Other courts distinguish between the right to the bankruptcy trustee's avoidance claim and a lien that attaches to the collateral and the proceeds thereof, in the form of a settlement agreement or otherwise. These courts hold that the "proceeds" of the avoidance claim relative to recovering property remains subject to the pre-petition security interest thereon, even though that creditor has no right to claim itself. Still other courts interpret the § 552(b) phrase "Except as provided in section … 547" to mean that the security interest is subject to avoidance if it is obtained during the anti-preference period, i.e., generally 90 days; it does not mean "that a pre-petition security interest may never extend to property which is acquired post-petition through a [11 U.S.C.A.] § 547 preference action."

There is some controversy relative to whether an avoidance claim can be brought with respect to property that is fully encumbered, since the recovery may only benefit the secured creditor.

Peter Spero, Fraudulent Transfers, Prebankruptcy Planning and Exemptions, Fraudulent

Transfers-Creditor Remedies, § 3:37.96 *Treatment of avoidance of property subject to security*

*agreement covering after acquired property, e.g., a floating lien, 11 U.S.C.A. § 552, Avoidance*

*claims as proceeds under § 552(b),* (West 2017) (footnotes omitted).

C. <u>Analysis</u>

1. Prepetition Liens Do No Attach to Avoidance Recoveries

Based upon the authorities cited by the parties, the Court adopts the position

espoused by the Plaintiff.  In particular, the Court finds persuasive the reasoning of the

decision in <u>In re Residential Capital LLC</u>, 497 B.R. at 414.  In that case, the New York

bankruptcy court, relying, in part, upon *Collier on Bankruptcy* at ¶ 552.02, observed:

> Avoidance actions, including those arising under state law, can only be
> brought by the trustee after the petition is filed under the trustee's section
> . . . [544(b)] . . . rights. These claims, therefore, arise post-petition and must
> be considered after-acquired property belonging to the estate. Further,
> because the Debtor does not own the right to pursue a fraudulent transfer
> action in bankruptcy (since that action belongs to the trustee post-petition
> under section . . . [544(b)] . . . *the Debtor could not have encumbered or assigned
> that right prepetition. See* <u>Myers v. First Source Fin., LLP (In re Demma Fruit
> Co.)</u>, 2002 Bankr.Lexis 1781, at *11 (Bankr. D. Neb. May 28, 2002) (stating
> that "[t]he debtor did not own the right to pursue a fraudulent transfer
> action . . . and therefore could not have encumbered or assigned that right");
> <u>Hutson v. First–Citizen Bank & Trust Co. (In re Nat'l Gas Distribs., LLC)</u>,
> No. 06–00031–8–AP, 2007 Bankr.Lexis 4703, at *21–22 (Bankr. E.D.N.C. July
> 24, 2007) (concluding that trustee's preference and fraudulent transfer
> recovery theories constitute post-petition property of the estate not subject
> to prepetition security interest).

<u>In re Residential Capital, LLC</u>, 497 B.R. at 414 (Bankr. S.D.N.Y. 2013) (emphasis supplied).

*Accord* <u>In re EPD Inv. Co., LLC</u>, 2018 WL 947636, at *10 ("<u>Figearo</u> is contrary to the weight

of authority and has not been followed by more recent cases.").

The Court also is persuaded that Maasai has not demonstrated that its lien extends

to any recovery by the Plaintiff under Mass. Gen. Laws ch. 93A.  In the first place, Count

IV of the Plaintiff's Complaint is a commercial tort claim as the Plaintiff alleges tortious

conduct in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11.  For example, in ¶ 46 of his

Complaint, the Plaintiff alleges the following misconduct on the part of the Defendants:

> Durham had no intention of canceling the DCR Note, but rather using the
> first lien position of the DCR Note to assert claims against the Debtor and
> to represent to other creditors, including, without limitation, LPS, that it
> held a senior secured position on the Debtor's accounts receivable. More
> specifically, Durham and Maasai attempted to dissuade ServiceLink from
> exercising its rights as a secured party by intentionally and falsely
> representing to ServiceLink that, in connection with the Factoring
> Agreement, Durham was acting only as agent for Maasai, and that Maasai's
> secured position was perfected by the same financing statement that had
> perfected the DCR Security Interest.

According to the United States Court of Appeals for the First Circuit,

> Under Massachusetts law, commercial tort claims must be described with
> specificity in a security agreement in order to be considered part of that
> agreement. Mass. Gen. Laws ch. 106, § 9–108(e)(1). This requirement places
> commercial tort claims in stark contrast to other kinds of collateral, which
> may be defined broadly by type as long as the description, even if not
> specific, "reasonably identifies what is described." Id. § 9–108(a).
> Furthermore, an after-acquired property clause in a security agreement
> cannot create a security interest in a commercial tort claim. Id. § 9–204(b)(2).
> The claim must already exist when the parties enter into the security
> agreement. See id. cmt. 4; see also id. § 9–108 cmt. 5.

City Sanitation, LLC v. Allied Waste Serv. of Mass., LLC (In re Am. Cartage, Inc.), 656

F.3d 82, 88 (1st Cir. 2011).[5]  The court added: "Viewed as a whole, Article 9 teaches that

---

[5] Section 9-108 provides:

(a) Sufficiency of description. Except as otherwise provided in subsections (c), (d), and
(e), a description of personal or real property is sufficient, whether or not it is specific, if
it reasonably identifies what is described.

when a party has an interest in a commercial tort claim as proceeds, what the secured party has is a right to the recovery, not a right to the claim itself." Id. at 89.

Secondly, the Trustee's Ch. 93A claim is not described with the particularity required by Mass. Gen. Laws ch. 9-108.  Thus, the Plaintiff's position that Maasai's lien did not attach to his Ch. 93A claim is meritorious.

---

(b) Examples of reasonable identification. Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

> (1) specific listing;
> (2) category;
> (3) except as otherwise provided in subsection (e), a type of collateral defined in this chapter;
> (4) quantity;
> (5) computational or allocational formula or procedure; or
> (6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.

(c) Supergeneric description not sufficient. A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral.

(d) Investment property. Except as otherwise provided in subsection (e), a description of a security entitlement, securities account, or commodity account is sufficient if it describes:

> (1) the collateral by those terms or as investment property; or
> (2) the underlying financial asset or commodity contract.

(e) When description by type insufficient. A description only by type of collateral defined in this chapter is an insufficient description of:

> (1) a commercial tort claim; or
> (2) in a consumer transaction, consumer goods, a security entitlement, a securities account, or a commodity account.

Mass. Gen. Laws Ann. ch. 106, § 9-108.

2. Reasonably Equivalent Value and the Plaintiff's Complaint

The Court concludes that there are genuine issues of material fact that preclude the entry of summary judgment. With respect to the issue of reasonably equivalent value, in particular, Maasai failed to comply with MLBR 7056-1 and D. Mass. LR 56.1. Maasai references the Amended and Restated Forbearance Agreement in support of its position but merely attached it to its Supplemental Memorandum, not its summary judgment papers.[6] Although the Maasai referenced a "Forbearance Agreement" in its summary judgment papers, that agreement was not attached to the summary judgment papers and Maasai only referenced a mortgage in passing in its Memorandum of Law ("The Forbearance Agreement also includes certain amendments to Loan Documents that provide additional benefits to the Debtors, including, by way of example a waiver of an existing cross collateralization of the Debtor's obligations against the real property secured by mortgage."). Although Maasai attached the Amended and Restated Forbearance Agreement to its Supplemental Memorandum of Law, the mortgage was not submitted as part of the record. Moreover, as correctly noted by the Plaintiff, although the Debtor's guaranty was no longer secured, it was not extinguished. Therefore, the Court finds that there are genuine issues of material fact surrounding the transaction that warrant denial of summary judgment.

---

[6] Although Maasai referenced exhibits in its Memorandum in Support of its Motion for Summary Judgment, they were not attached to the document.

**V. CONCLUSION**

In accordance with the foregoing, the Court shall enter an order denying Maasai's

Motion for Summary Judgment.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  April 4, 2018