# Exhibit
# 5

**Exhibit 5**

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT _____ District of Massachusetts (Boston) | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br>Connolly Geaney Ablitt & Willard, P.C. | Case Number:<br>14-14164 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ServiceLink NLS, LLC as assignee of Black Knight Technology Solutions, LLC

**COURT USE ONLY**

Name and address where notices should be sent:
David W. Ross, Esquire c/o Babst, Calland, Clements and Zomnir, P.C.
Two Gateway Center, Pittsburgh, PA 15211

Telephone number: (412) 394-6558     email: dross@babstcalland.com

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
    (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):



Telephone number:          email:

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**     $ 3,934,208.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Note and Security Agreement
   (See instruction #2)

| **3.  Last four digits of any number** by which creditor identifies debtor:<br><br>__ __ __ __ | **3a. Debtor may have scheduled account as:**<br><br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏Real Estate  ❏Motor Vehicle  ☒Other
Describe: See attached Addendum and Exhibits

Value of Property: $_____

Annual Interest Rate_____% ❏Fixed  or  ❏Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ See attached Addendum

**Basis for perfection:** See attached Addendum and Exhibits

**Amount of Secured Claim:** $3,934,208.00

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                                                                2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.      ☐ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor,      ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                          or their authorized agent.               (See Bankruptcy Rule 3005.)
                                                                          (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Meghan E. Jones-Rolla
Title:        Senior Vice President, Assistant General Counsel
Company:      ServiceLink NLS, LLC
Address and telephone number (if different from notice address above):                    _____          2-16-15
1400 Cherrington Parkway                                                                  (Signature)                      (Date)
Moon Township, PA 15108

Telephone number: 412-776-2046      email: Meghan.JonesRolla@ServiceLinkFNF.com

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| In re:<br><br>CONNOLLY GEANEY ABLITT &<br>WILLARD, P.C.<br><br>               Debtor. | Chapter 7<br><br>Bankr. No.      14-14164 |

## ADDENDUM TO PROOF OF CLAIM OF
## SERVICELINK NLS, LLC AS ASSIGNEE OF
## BLACK KNIGHT TECHNOLOGY SOLUTIONS, LLC

The basis of this claim arises out of the breach of a promissory note given by Ablitt Scofield, P.C. now known as Connolly, Geaney, Ablitt & Willard, P.C. (the "Debtor"), and currently held by ServiceLink NLS, LLC ("ServiceLink").

Lender Processing Services, LLC ("LPS") was a company that provided certain mortgage related products and non-legal administrative services to businesses and law firms.  LPS was acquired by ServiceLink's parent company, Black Knight Holdings, Inc., in January of 2014. ServiceLink now operates LPS's former transaction services business, including origination and default related products and services.

The Debtor used technology and mortgage default products and services of LPS and its business affiliates, including LPS Agency Sales and Posting, Inc. n/k/a ServiceLink Agency Sales and Posting, LLC ("ASAP"), in connection with the Debtor's law practice.

On August 8, 2012, LPS's affiliate, ASAP, filed an action in the U.S. District Court for the District of Massachusetts at Case No. 1:12-cv-11470 against the Debtor and Steve Ablitt for the default of a Promissory Note dated October 7, 2011 and Personal Guaranty dated February 2, 2012 for the principal amount of $2,295,844.05 ("ASAP Action").  The indebtedness that is the subject of the ASAP Action originated from invoices dating back to March of 2010.

As part of the settlement of the ASAP Action, on October 15, 2012, the Debtor, then known as Ablitt Scofield, a Professional Corporation, executed and delivered to LPS a Promissory Note and Agreement for the principal amount of $4,148,027.00 (the "Note"), representing the amount owed by the Debtor to ASAP and other LPS affiliates for past due invoices.  A true and correct copy of the Note is attached to this Proof of Claim as **Exhibit "A."** The Note is secured, *inter alia*, by a security interest in all business assets of the Debtor as evidenced by a Security Agreement dated October 15, 2012 and UCC-1 Financing Statements duly filed with the Rhode Island Secretary of State (the "UCCs").  True and correct copies of the Security Agreement and the UCCs are attached hereto as **Exhibits "B" and "C."**

{B1930115.2}

Beginning in October 2012, the Debtor made periodic payments to LPS pursuant to the terms of the Note; however LPS last received payment from the Debtor in November 2013.

On or about January 7, 2014 LPS changed its name to BKIS, LLC, and on March 25, 2014, BKIS, LLC changed its name to Black Knight Financial Technology Solutions, LLC. On or about August 18, 2014, Black Knight Financial Technology Solutions, LLC assigned the Note, Security Agreement and related documents to ServiceLink. A true and correct copy of the Assignment is attached hereto as **Exhibit "D."**

As of September 3, 2014 (the "Petition Date"), the amounts due and owing to ServiceLink by the Debtor pursuant to the Note and Security Agreement, totals $3,934,208.00, which amount is itemized as follows:

| | |
|---|---|
| **Principal:** | $3,283,552.97 |
| **Interest:** | $443,279.65 |
| **Late Charges:** | $186,341.63 |
| **Attorneys' Fees:** | $21,033.75 |
| **TOTAL:** | **$3,934,208.00** |

ServiceLink reserves all rights, remedies and defenses and further reserves the right to amend, modify or supplement this Proof of Claim at any time and in any respect, including without limitation, to add additional amounts due, including costs, expenses and attorneys' fees, to the extent permitted by applicable law, and to assert any and all other claims of whatever kind or nature that it has or may have against the Debtor.

# EXHIBIT A

# PROMISSORY NOTE AND AGREEMENT

$4,148,027                                          Woburn, Massachusetts

                                                    October 15, 2012

     THIS PROMISSORY NOTE AND AGREEMENT (this "**Note**") is dated as of the 15th day of October (the "**Effective Date**") by **ABLITT SCOFIELD, A PROFESSIONAL CORPORATION**, a Rhode Island professional corporation (the "**Maker**"), having an address at 304 Cambridge Road, Woburn, Massachusetts 01801, in favor of **LENDER PROCESSING SERVICES, LLC** (the "**Holder**"), having an address at 601 Riverside Avenue, T-2, Jacksonville, Florida 32204.

## RECITALS:

     **WHEREAS**, the Holder and its business affiliates ("**Affiliates**") are in the business of providing certain mortgage related products and non-legal administrative services to business entities, including law firms (the "**Services**"); and

     **WHEREAS**, the Maker has contracted one or more Affiliates of the Holder to provide the Services; and

     **WHEREAS**, during the course of the provision of Services to the Maker by the Affiliates (the "**Past Services**"), the Affiliates have issued periodic invoices (the "**Past Invoices**") for the Services; and

     **WHEREAS**, the Maker acknowledges that the Past Services have been performed by the Affiliates in a timely manner, and that the Past Services have been satisfactory to the Maker; and

     **WHEREAS**, notwithstanding the fact that the Maker acknowledges that the Past Services have been performed by the Affiliates in a satisfactory, timely manner, the Maker has failed to pay the Past Invoices, which total Four Million One Hundred Forty Eight Thousand Twenty-Seven Dollars ($4,148,027.00) (the "**Owed Amount**") as of the Effective Date; and

     **WHEREAS**, the Maker acknowledges that the Owed Amount is immediately due and payable by it to the Affiliates; and

     **WHEREAS**, the Maker acknowledges that the Holder has been authorized by the each of the Affiliates to consolidate all Past Invoices into this Note and to permit the Holder to act on behalf of the Affiliates for the convenience of the Affiliates, the Holder and the Maker in providing for payment, performance and discharge of the Owed Amount; and

     **WHEREAS**, notwithstanding the fact that the Owed Amount is immediately due and payable by the Maker to the Affiliates, the Affiliates have agreed to continue to provide the

Services to the Maker, on the condition that the Maker executes this Note evidencing that the Maker owes the Affiliates the Owed Amount and Maker's agreement to make the payments to the Holder respecting the Owed Amount and services rendered by Affiliates to Maker after the Effective Date (the "**Future Services**"); and

WHEREAS, as a further condition of the Affiliates continuing to provide the Future Services to the Maker, the Maker agrees to pay to the Holder, within thirty (30) calendar days of its issuance to the Maker by an Affiliate, the amount reflected (a "**Future Amount**") on any invoice respecting Future Services rendered by such Affiliate) to the Maker (a "**Future Invoice**"); and

WHEREAS, as a further condition of the Affiliates continuing to provide the Future Services to the Maker, and to secure the payment of the Obligations as defined in Section 2 below, one or more members of the Maker (collectively, the "**Guarantors**" and individually, a "**Guarantor**" have agreed to personally guarantee the payment of the Obligations to the Holder for the benefit of the Affiliates by executing a certain Unconditional Personal Guaranty (individually, a "**Guaranty**" and, collectively, "**Guaranties**"), dated as of the Effective Date, in favor of the Holder; and

WHEREAS, as a further condition of the Affiliates continuing to provide the Future Services to the Maker, and to secure the payment of the Obligations, the Maker has agreed to execute a certain Security Agreement (the "**Security Agreement**"), dated as of the Effective Date, in favor of the Holder, granting the Holder a blanket lien on the assets of the Maker.

NOW, THEREFORE, in consideration of the recitals set forth above, the accommodations being provided by the Holder to the Maker with respect to the Owed Amount and the continued delivery of Future Services by the Affiliates, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Maker agrees to pay the Owed Amount and other Obligations (as defined below) as follows:

1.    **Incorporation of Recitals**. The Recitals set forth above are hereby incorporated into and made a part of this Note as if set forth herein in full.

2.    **Promise to Pay**. This Note evidences the Owed Amount, all of which is currently due and unconditionally owing to the Holder by the Maker in the original principal amount of FOUR MILLION ONE HUNDRED FORTY EIGHT THOUSAND TWENTY-SEVEN DOLLARS ($4,148,027.00) (the "**Principal**"), together with Interest (as defined in Section 3.A below), any and all Future Amounts and any such charges, payments, expenses, taxes and fees accrued and unpaid or incurred under the terms and conditions of the following documents (the foregoing amounts, collectively, the "**Obligations**"): (i) this Note; (ii) the Security Agreement; and (iii) the Guaranty (this Note, the Security Agreement and the Guaranty, collectively, the "**Financial Obligation Documents**"). The Maker hereby promises to pay, perform and discharge the Principal, together with Interest, any and all Future Amounts and any and all other Obligations due or to become due to the Holder in accordance with the terms and conditions of the Financial Obligation Documents and, as to Future Amounts, all other applicable agreements between the Maker, Holder and/or Holder's Affiliates.

2

3.    **Interest**.

A.    <u>Interest Rate</u>. Interest shall accrue on the outstanding Principal ("**Interest**") beginning on the Effective Date as follows:

(i) from two months after the Effective Date until November 15, 2014, at the rate of six percent (6.00%) per annum;

(ii) from November 16, 2014 until November 15, 2015, at the rate of seven percent (7.00%) per annum;

(iii) from November 16, 2015 until October 15, 2016 at the rate of eight percent (8.00%) per annum; and

(iv) after October 15, 2016, at the Default Rate of interest as defined and set forth herein.

Interest shall be compounded monthly and shall be computed on the basis of a 360 day year for the actual number of days in the applicable period. Interest that accrues on this Note under the terms hereof from the Effective Date to the date of the first payment to be made by the Maker to the Holder hereunder shall amortized over the term of this Note.

B.    <u>Default Rate</u>. Each amount payable by the Maker to the Holder in satisfaction of the Obligations that is not paid on or before the date when due (and any applicable grace period), shall bear interest at eighteen percent (18%) per annum (the "**Default Rate**"), until the date on which such amount is paid, in full.

C.    <u>No Usury</u>. Notwithstanding anything to the contrary in this Note, no provisions of this Note or any of the other Financial Obligation Documents shall require the payment or permit the accrual or collection of Interest in excess of the maximum rate of interest permitted under applicable laws.

4.    <u>**Term and Payments of Principal and Interest and Future Amounts**</u>.

A.    <u>Payment of Principal and Interest</u>.   The term for payment of the Principal of this Note shall be for a period commencing on the Effective Date and terminating on October 15, 2016 (the "**Maturity Date**"). On October 15, 2012, the Maker shall pay the Holder One Hundred Fifty Thousand Dollars ($150,000.00), which shall be applied to reduce the Principal of this Note. On November 15, 2012, the Maker shall make a second payment to the Holder of One Hundred Fifty Thousand Dollars ($150,000.00), which shall also be applied to reduce the Principal of this Note. The Maker shall pay the Holder minimum monthly payments in accordance with the Amortization Schedule attached to this Promissory Note as **Attachment 1** and incorporated herein. All payments to be made by the Maker to the Holder hereunder shall be due and payable on the fifteenth (15th) day of each month.

B.    <u>Payment of Future Amounts</u>. The Maker shall pay, pursuant to the terms and conditions of applicable agreements between the Maker and Affiliates, within thirty (30)

3

calendar days of its issuance to Debtor by an Affiliate, each Future Amount reflected on any Future Invoice.

5.    **Late Charges.**  If the Maker fails to pay any of the Obligations pursuant to this Note, including any payment on Principal or Interest, on or before its due date (a "**Delinquent Payment**"), the Maker shall pay the Holder along with the Delinquent Payment a late charge equal to five percent (5%) of the amount of the Delinquent Payment (the "**Late Charge**"). The imposition of the Late Charge is for the purpose of defraying the expenses incident to the Delinquent Payment, which expenses are not susceptible to calculation but which the Maker and the Holder reasonably estimate to be five percent (5%). Any Late Charge that is not paid when the Delinquent Payment is made shall be added to and become a part of the next succeeding payment due. The imposition of the Late Charge shall be in addition to, and not in lieu of, all other remedies available to the Holder upon an Event of Default (as defined in Section 11 below), including the accrual of Interest at the Default Rate. Acceptance by the Holder of a Delinquent Payment without an accompanying Late Charge shall not be deemed a waiver of the Holder's right to collect the Late Charge or to collect a Late Charge for any subsequent Delinquent Payment.

6.    **Security.**  The full and timely satisfaction by the Maker of all of the Obligations is secured by the Security Agreement and the Guaranties.

7.    **No Setoff.**  Each payment to be made by the Maker to the Holder hereunder shall be paid by the Maker without notice, demand, setoff, or counterclaim.

8.    **Payment.**  Each payment made by the Maker to the Holder hereunder shall be paid by either wire transfer of immediately available funds into the designated account of the Holder, or by check payable to the Holder and delivered to the Holder on or before the applicable due date at the following address: 601 Riverside Avenue, T-2, Jacksonville, Florida 32204, attention: Robert Baker, or such other address as the Holder shall direct the Maker, in writing.

9.    **Application of Installments.**  Provided no Event of Default has occurred and is continuing, each payment made by the Maker to the Holder hereunder with respect to installment payments on the Principal and Interest shall first be applied to accrued but unpaid Interest and then to Principal. If an Event of Default has occurred and is continuing, each payment made by the Maker to the Holder hereunder shall be applied to any of the outstanding Obligations, and in any order and combination as the Holder, in its sole and absolute discretion, shall determine.

10.    **Prepayment Right.**  The Maker may prepay all or any portion of this Note, at any time without penalty. Any prepayment in whole or in part shall include accrued but unpaid Interest and all other sums then due under any of the Financial Obligation Documents. No partial prepayment on the Principal shall affect the obligation of the Maker to pay any payment due the Holder on its applicable due date.

11.    **Event of Default.**  The occurrence of any of the following events shall constitute an event of default under this Note (each, an "**Event of Default**"):

4

A.    the Maker's failure to make any Principal or Interest payment due to the Holder under this Note when due and such failure shall continue uncured for a period equal to fifteen (15) calendar days following the due date of such payment, or, the default in payment, performance or discharge by Maker of any obligation, responsibility or requirement under any other Financial Obligation Document, contract or agreement between Maker and an Affiliate;

B.    except for any payment obligation of the Maker under this Note, the Maker's breach of any other obligation under this Note that continues for a period of ten (10) calendar days after the delivery of written notice of the breach to the Maker;

C.    any sale, transfer, assignment or other disposition of all or substantially all of the assets of the Maker;

D.    the appointment of a receiver for the Maker;

E.    the filing of a petition by or against the Maker for relief under any bankruptcy or insolvency law, which petition is not dismissed within sixty (60) calendar days of the filing thereof;

F.    an assignment by the Maker of its assets for the benefit of creditors;

G.    an "Event of Default" as defined in any of the other Financial Obligation Documents; or

H.    the failure by the Maker, after the Effective Date, to pay to Holder's Affiliate(s), within thirty (30) calendar days of its issuance to Maker by Holder's Affiliate(s), any Future Amount reflected on any Future Invoice.

12.    **Rights and Remedies.** Upon the occurrence of an Event of Default, the Holder may, at its option and in addition to, and not in lieu of, any other rights and remedies the Holder may have under any of the Financial Obligation Documents, or at law or in equity,

A.    upon ten (10) calendar days written notice to the Maker, instruct any or all Affiliates to suspend or terminate any or all Future Services to the Maker; and

B    declare the entire unpaid balance of the Obligations immediately due and payable without notice, demand or presentment, notice of intent to accelerate or notice of acceleration, all of which are hereby WAIVED by the Maker, upon which declaration all of the unpaid Obligations shall become immediately due and payable.

13.    **No Waiver by Holder.** No failure by the Holder to exercise any right or remedy under the Financial Obligation Documents shall constitute a waiver of the Holder's right to exercise such right or remedy with regard to any current or subsequent Event of Default. No acceptance by the Holder of a past due payment hereunder shall constitute a waiver of the Holder's right to insist upon prompt payment of each subsequent payment due or to impose a Late Charge thereafter or retroactively.

**14.    Notice.** All notices and other communications required or permitted under this Note shall be in writing and shall be deemed to have been given when delivered in person (with receipt acknowledged) or sent by certified or registered mail, postage prepaid, return receipt requested, or by facsimile, Federal Express, United Parcel Service (UPS) or other nationally recognized reputable overnight mail or delivery service to the Holder, at the address or facsimile number as follows or at the address or facsimile number provided in a written notice pursuant to this Section:

> Holder:
> > Lender Processing Services, LLC
> > Attn: Robert Baker
> > 601 Riverside Avenue, T-2
> > Jacksonville, Florida 32204
> > Facsimile: 904-854-4391

> Maker:
> > Ablitt Scofield, PC
> > Attn: Robert Feige
> > 304 Cambridge Road
> > Woburn Massachusetts 01801
> > Facsimile: 781-246-8994

**15.    Waivers by Maker.** The Maker, for itself and its successors and permitted assigns, if any, hereby waives presentment, protest, demand, diligence, notice of dishonor and of nonpayment, and waives and renounces all rights to the benefits of any statute of limitations and any moratorium, or exemption to which it may otherwise now or in the future be entitled or which may be provided under any federal or state statute, including exemptions provided by or allowed under any federal or state bankruptcy or insolvency laws, both as to itself and as to all of its property, whether real or personal, against the collection and enforcement of the Obligations.

**16.    Governing Law; Consent to Jurisdiction; Service.** This Note and all of the other Financial Obligation Documents shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its principles of conflict of laws. Any suit, action or proceeding arising out of or relating in any way to this Note or any of the other Financial Obligation Documents (a **"Proceeding"**) shall be brought only in the Duval County Circuit Court of the State of Florida or the United States District Court for the Middle District of Florida. The Maker: (i) consents to the exclusive jurisdiction of such court and of its respective appellate courts in any Proceeding; (ii) irrevocably waives, to the fullest extent permitted by law, any objection that it may now or in the future have to the laying of the venue of any Proceeding in any such court or that any Proceeding that is brought in any such court has been brought in an inconvenient forum; (iii) agrees not to attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court; and (iv) agrees not to bring any Proceeding in any other court. Process in any Proceeding may be served on the Maker anywhere in the world, whether within or without the jurisdiction of any such court. Without limiting the foregoing, the Maker agrees that service of process by hand delivery, overnight courier or

6

certified mail, return receipt requested, at the address set forth in the introduction to this Note shall be deemed effective service of process on the Maker.

17.   WAIVER OF JURY TRIAL; NO PUNITIVE DAMAGES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE MAKER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, OR ANY OF THE OTHER FINANCIAL OBLIGATION DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF THE MAKER WITH RESPECT TO THIS NOTE AND THE OTHER FINANCIAL OBLIGATION DOCUMENTS. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE HOLDER'S AGREEMENT TO MAKE THE FINANCIAL ACCOMMODATION THAT FORMS THE BASIS OF THIS NOTE. IN ADDITION, THE MAKER SHALL NOT HAVE A REMEDY OF PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE HOLDER OR ANY AFFILIATE IN ANY DISPUTE ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY OF THE OTHER FINANCIAL OBLIGATION DOCUMENTS, AND THE MAKER HEREBY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES IT HAS NOW OR THAT MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH DISPUTE.

18.   **Costs of Enforcement.** The Maker shall pay, upon demand, any costs (including reasonable attorneys' fees and disbursements and court costs) incurred by the Holder in enforcing its rights under this Note and the other Financial Obligation Documents, including the full and timely satisfaction of all of the Obligations.

19.   **Invalidity.** Any provision of this Note that is determined by a court of competent jurisdiction to be unenforceable shall be effective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Note.

20.   **No Amendment.** This Note may not be may be altered, modified, supplemented or amended except in a writing signed by the Holder and the Maker.

21.   **Assignment.** This Note may not be assigned by the Maker without the prior written consent of the Holder, which it may grant or deny in its sole discretion. This Note shall be assignable by the Holder upon ten (10) calendar days written notice to the Maker.

22.   **Meaning of Including.** Whenever the term "including" is used in this Note, it shall be deemed to mean "including, without limitation."

23.   **Waiver of Confidentiality.** Maker agrees to waive the confidentiality restrictions, if any, contained in any contract or agreement between Maker and a business affiliate of Holder, for the sole purpose of allowing Holder to gain a complete understanding of the ability of Maker to pay, perform and discharge its Obligations pursuant to this Note.

**IN WITNESS WHEREOF,** the Maker has executed this Note as of the Effective Date.

WITNESS:

ABLITT SCOFIELD, A PROFESSIONAL
CORPORATION

By: _____

_____
an authorized person

STATE OF  *Massachusetts*

COUNTY OF  *Middlesex*  ss.:

On *October 15*, 2012, before me, the undersigned notary public, personally appeared _____*Steven A. Ablitt*_____ who acknowledged to me that he/she is the _____ of the Maker named in this instrument and that he/she executed the same as his/her own voluntary act and deed as a duly authorized signatory of the Maker in that capacity.

_____

Notary Public of the State of  *Massachusetts*

My Commission Expires:  *8/5/2016*

ANNA D. RAPOZA
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
August 5, 2016

8

# Attachment 1 - page 1

**Lender Processing Services, LLC**

**Ablitt Promissory Note Amortization Schedule**

*10/5/2012*

| Principal | $ | 4,148,027 |
|---|---|---|
| Interest | | |
| Yr 1 - start pymt 3 | | 6.00% |
| Yr 2 | | 6.00% |
| Yr 3 | | 7.00% |
| Yr 4 | | 8.00% |
| | | |
| Payment | | |
| Payment 1-2 | $ | 150,000 |
| Payment 3-14 | $ | 65,000 |
| Month 15-26 | $ | 85,000 |
| Month 27-38 | $ | 105,000 |
| Month 39-48 | $ | 125,000 |
| Month 49 | $ | 115,306 |

| Total Principal | $ | 4,148,026.66 |
|---|---|---|
| Total Interest | $ | 577,279.49 |
| Total Payments | $ | 4,725,306.15 |

| Month | Interest | Principal | Total Payment | Principal Balance | Payment # | Annual Interest Rate |
|---|---|---|---|---|---|---|
| 10/15/2012 | $ - | $ 150,000.00 | $ 150,000.00 | $ 3,998,026.66 | 1 | 0.00% |
| 11/15/2012 | $ - | $ 150,000.00 | $ 150,000.00 | $ 3,848,026.66 | 2 | 0.00% |
| 12/15/2012 | $ 19,240.13 | $ 45,759.87 | $ 65,000.00 | $ 3,802,266.79 | 3 | 6.00% |
| 1/15/2013 | $ 19,011.33 | $ 45,988.67 | $ 65,000.00 | $ 3,756,278.13 | 4 | 6.00% |
| 2/15/2013 | $ 18,781.39 | $ 46,218.61 | $ 65,000.00 | $ 3,710,059.52 | 5 | 6.00% |
| 3/15/2013 | $ 18,550.30 | $ 46,449.70 | $ 65,000.00 | $ 3,663,609.82 | 6 | 6.00% |
| 4/15/2013 | $ 18,318.05 | $ 46,681.95 | $ 65,000.00 | $ 3,616,927.86 | 7 | 6.00% |
| 5/15/2013 | $ 18,084.64 | $ 46,915.36 | $ 65,000.00 | $ 3,570,012.50 | 8 | 6.00% |
| 6/15/2013 | $ 17,850.06 | $ 47,149.94 | $ 65,000.00 | $ 3,522,862.57 | 9 | 6.00% |
| 7/15/2013 | $ 17,614.31 | $ 47,385.69 | $ 65,000.00 | $ 3,475,476.88 | 10 | 6.00% |
| 8/15/2013 | $ 17,377.38 | $ 47,622.62 | $ 65,000.00 | $ 3,427,854.26 | 11 | 6.00% |
| 9/15/2013 | $ 17,139.27 | $ 47,860.73 | $ 65,000.00 | $ 3,379,993.53 | 12 | 6.00% |
| 10/15/2013 | $ 16,899.97 | $ 48,100.03 | $ 65,000.00 | $ 3,331,893.50 | 13 | 6.00% |
| 11/15/2013 | $ 16,659.47 | $ 48,340.53 | $ 65,000.00 | $ 3,283,552.97 | 14 | 6.00% |
| 12/15/2013 | $ 16,417.76 | $ 68,582.24 | $ 85,000.00 | $ 3,214,970.73 | 15 | 6.00% |
| 1/15/2014 | $ 16,074.85 | $ 68,925.15 | $ 85,000.00 | $ 3,146,045.59 | 16 | 6.00% |

# Attachment 1 - page 2

Lender Processing Services, LLC

Ablitt Promissory Note Amortization Schedule

10/5/2012

| Date | | | | | | |
|------|------|------|------|------|----|-------|
| 2/15/2014 | $ 15,730.23 | $ 69,269.77 | $ 85,000.00 | 3,076,775.82 | 17 | 6.00% |
| 3/15/2014 | $ 15,383.88 | $ 69,616.12 | $ 85,000.00 | 3,007,159.70 | 18 | 6.00% |
| 4/15/2014 | $ 15,035.80 | $ 69,964.20 | $ 85,000.00 | 2,937,195.49 | 19 | 6.00% |
| 5/15/2014 | $ 14,685.98 | $ 70,314.02 | $ 85,000.00 | 2,866,881.47 | 20 | 6.00% |
| 6/15/2014 | $ 14,334.41 | $ 70,665.59 | $ 85,000.00 | 2,796,215.88 | 21 | 6.00% |
| 7/15/2014 | $ 13,981.08 | $ 71,018.92 | $ 85,000.00 | 2,725,196.96 | 22 | 6.00% |
| 8/15/2014 | $ 13,625.98 | $ 71,374.02 | $ 85,000.00 | 2,653,822.94 | 23 | 6.00% |
| 9/15/2014 | $ 13,269.11 | $ 71,730.89 | $ 85,000.00 | 2,582,092.06 | 24 | 6.00% |
| 10/15/2014 | $ 12,910.46 | $ 72,089.54 | $ 85,000.00 | 2,510,002.52 | 25 | 6.00% |
| 11/15/2014 | $ 12,550.01 | $ 72,449.99 | $ 85,000.00 | 2,437,552.53 | 26 | 6.00% |
| 12/15/2014 | $ 14,219.06 | $ 90,780.94 | $ 105,000.00 | 2,346,771.59 | 27 | 7.00% |
| 1/15/2015 | $ 13,689.50 | $ 91,310.50 | $ 105,000.00 | 2,255,461.09 | 28 | 7.00% |
| 2/15/2015 | $ 13,156.86 | $ 91,843.14 | $ 105,000.00 | 2,163,617.94 | 29 | 7.00% |
| 3/15/2015 | $ 12,621.10 | $ 92,378.90 | $ 105,000.00 | 2,071,239.05 | 30 | 7.00% |
| 4/15/2015 | $ 12,082.23 | $ 92,917.77 | $ 105,000.00 | 1,978,321.28 | 31 | 7.00% |
| 5/15/2015 | $ 11,540.21 | $ 93,459.79 | $ 105,000.00 | 1,884,861.48 | 32 | 7.00% |
| 6/15/2015 | $ 10,995.03 | $ 94,004.97 | $ 105,000.00 | 1,790,856.51 | 33 | 7.00% |
| 7/15/2015 | $ 10,446.66 | $ 94,553.34 | $ 105,000.00 | 1,696,303.17 | 34 | 7.00% |
| 8/15/2015 | $ 9,895.10 | $ 95,104.90 | $ 105,000.00 | 1,601,198.27 | 35 | 7.00% |
| 9/15/2015 | $ 9,340.32 | $ 95,659.68 | $ 105,000.00 | 1,505,538.60 | 36 | 7.00% |
| 10/15/2015 | $ 8,782.31 | $ 96,217.69 | $ 105,000.00 | 1,409,320.91 | 37 | 7.00% |
| 11/15/2015 | $ 8,221.04 | $ 96,778.96 | $ 105,000.00 | 1,312,541.94 | 38 | 7.00% |
| 12/15/2015 | $ 8,750.28 | $ 116,249.72 | $ 125,000.00 | 1,196,292.22 | 39 | 8.00% |
| 1/15/2016 | $ 7,975.28 | $ 117,024.72 | $ 125,000.00 | 1,079,267.51 | 40 | 8.00% |
| 2/15/2016 | $ 7,195.12 | $ 117,804.88 | $ 125,000.00 | 961,462.62 | 41 | 8.00% |
| 3/15/2016 | $ 6,409.75 | $ 118,590.25 | $ 125,000.00 | 842,872.37 | 42 | 8.00% |
| 4/15/2016 | $ 5,619.15 | $ 119,380.85 | $ 125,000.00 | 723,491.52 | 43 | 8.00% |
| 5/15/2016 | $ 4,823.28 | $ 120,176.72 | $ 125,000.00 | 603,314.80 | 44 | 8.00% |
| 6/15/2016 | $ 4,022.10 | $ 120,977.90 | $ 125,000.00 | 482,336.90 | 45 | 8.00% |
| 7/15/2016 | $ 3,215.58 | $ 121,784.42 | $ 125,000.00 | 360,552.48 | 46 | 8.00% |
| 8/15/2016 | $ 2,403.68 | $ 122,596.32 | $ 125,000.00 | 237,956.16 | 47 | 8.00% |
| 9/15/2016 | $ 1,586.37 | $ 123,413.63 | $ 125,000.00 | 114,542.54 | 48 | 8.00% |
| 10/15/2016 | $ 763.62 | $ 114,542.53 | $ 115,306.15 | 0.00 | 49 | 8.00% |
| | $ 577,279.49 | $ 4,148,026.66 | $ 4,725,306.15 | | | |

# EXHIBIT B

## SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** (this "**Agreement**"), is dated as of the 15th day of October, 2012 (the "**Effective Date**") and is by and between **ABLITT SCOFIELD, A PROFESSIONAL CORPORATION**, a Rhode Island professional corporation (the "**Maker**"), having an address at 304 Cambridge Road, Woburn, Massachusetts 01801, in favor of **LENDER PROCESSING SERVICES, LLC** (the "**Holder**"), having an address at 601 Riverside Avenue, T-2, Jacksonville, Florida. All capitalized terms otherwise undefined in this Agreement shall have the meanings given to them in the Promissory Note and Agreement, dated as of the Effective Date, by the Maker in favor of the Holder (the "**Note**").

### BACKGROUND

A.     The Maker is indebted to the Holder in the amount of Four Million One Hundred Forty Eight Thousand Twenty-Seven Dollars ($4,148,027.00), as evidenced by the Note.

B.     The full and timely satisfaction of the Obligations are to be secured by, among other things, a first priority security interest in all of the assets of the Maker in accordance with the terms and conditions of this Agreement.  Notwithstanding the foregoing, Holder acknowledges that DCR Mortgage IV Sub I, LLC has a prior recorded financing statement claiming a security interest in all of the assets of Maker to secure a line of credit (the "Line of Credit").

**NOW, THEREFORE,** in consideration of the promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as set forth below.

### TERMS

1.     **Certain Definitions.**  All terms used in this Agreement that are defined in the Uniform Commercial Code of Florida (the "**Florida UCC**") shall have the same definition as in the Florida UCC; provided that any term that has a different definition under Article 9 of the Florida UCC from the meaning under any other Article of the Florida UCC shall have the meaning specified in Article 9 of the Florida UCC.

2.     **Grant of Security Interest.**  The Maker hereby grants to the Holder, in order to secure the payment, performance and discharge in full of all of the Obligations, a security interest in and so pledges and assigns to the Holder the following properties, assets and rights of the Maker, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof (collectively, the "**Collateral**"): all personal and fixture property of every kind and nature including all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money,

accounts receivable, all books, records and data relating to accounts receivable, insurance claims and proceeds, and all general intangibles (including all patents and patent rights, trademarks, service marks and trademark and service mark rights, together with the goodwill appurtenant thereto, and all other intellectual property and payment intangibles).

3. **Authorization to File Financing Statements.** The Maker hereby irrevocably authorizes the Holder, at any time and from time to time, to file in any filing office in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto that: (i) indicate the Collateral as all assets of the Maker or words of similar effect; and (ii) provide any other information required by the Uniform Commercial Code of Florida, or such other jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment.

4. **Other Actions.** The Maker further agrees, at the request and option of the Holder, to take any and all other actions the Holder may determine to be necessary or useful for the attachment, perfection and first priority of, and the ability of the Holder to enforce, the Holder's security interest in any and all of the Collateral, including: (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the Uniform Commercial Code, to the extent, if any, that the Maker's signature is required; (ii) causing the Holder's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of the Holder to enforce, the Holder's security interest in any Collateral; (iii) complying with any provision of any statute, or regulation as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of the Holder to enforce, the Holder's security interest in any Collateral; and (iv) obtaining governmental and other third party waivers, consents and approvals in form and substance satisfactory to the Holder, including any consent of any licensor, lessor or other person obligated on any Collateral.

5. **Representations, Warranties and Covenants of the Maker.** The Maker represents, warrants and covenants to the Holder as follows:

A. The Maker is a Rhode Island professional corporation having the name "Ablitt Scofield, a Professional Corporation", and the Maker's organizational identification number is 126742.

B. The Maker is the owner of the Collateral, free from any right or claim of any person or any lien, mortgage, option, warrant, security interest or other encumbrance (collectively, "**Liens**"), except for the security interest to DCR Mortgage IV Sub I, LLC to secure the Line of Credit and the security interest created by this Agreement.

C. Until all of the Obligations are fully satisfied:

(i) the Maker will not, without providing at least thirty (30) days prior written notice to the Holder, change its name, place of business or organizational identification number, jurisdiction of organization or other legal structure;

(ii)    the Maker shall maintain the Collateral at its regular place of business, 304 Cambridge Rd., Woburn, Massachusetts 01801, and will not remove the Collateral from such location without providing at least thirty (30) days prior written notice to the Holder;

(iii)    except for the security interest granted to the Holder, the Maker shall remain the sole owner of the Collateral free from any Liens and the Maker shall defend the Collateral against all Liens of all persons at any time claiming the same or any interests therein adverse to the Holder;

(iv)    the Maker shall not create or permit to be created, any Liens in or on any of the Collateral, other than the Liens of the Holder;

(v)    the Maker will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance covering the Collateral and will pay promptly when due all taxes, assessments, governmental charges and levies upon the Collateral or incurred in connection with the use or operation of the Collateral;

(vi)    the Maker will permit the Holder, or its designee, to inspect the Collateral at any reasonable time, wherever located;

(vii)    the Maker will not sell or otherwise dispose, or offer to sell or otherwise dispose, of the Collateral or any interest therein except for sales of inventory in the ordinary course of business consistent with past practices;

(viii)    the Maker will maintain with financially sound and reputable insurers policies of insurance with respect to its properties and business, in the form and amounts, and against such casualties and contingencies, as are maintained by businesses engaged in similar activities as the Maker, with all insurance payable to the Holder as loss payee.  All policies of insurance shall provide for at least thirty (30) days prior written cancellation notice to the Holder. In the event of failure by the Maker to provide and maintain policies of insurance as provided above, the Holder may, at its option, obtain such insurance at the Maker's cost and expense.  The Maker shall furnish the Holder with certificates of insurance evidencing compliance with the foregoing insurance provision; and

(ix)    the Maker has not made and will make no further draws, has not accepted and will accept no further advances on the Line of Credit after the Effective Date, and has not incurred and will not incur further liability to DCR Mortgage IV Sub I, LLC except for interest accruing on the principal debt outstanding as of the Effective Date.

6.    **Preservation of Collateral**.  If the Maker fails to do so, the Holder may, but is not required to, discharge taxes and other encumbrances at any time levied or placed on any of the Collateral and maintain and repair any of the Collateral.

7.    **Notification to Account Debtors and Other Persons Obligated on Collateral**. If an Event of Default shall have occurred and be continuing, the Maker shall, at the request and option of the Holder notify account debtors and other persons obligated on any of the Collateral of the

3

security interest of the Holder in any account, chattel paper, general intangible, instrument or other Collateral and that payment is to be made directly to the Holder or to any financial institution designated by the Holder as the Holder's agent, and the Holder may itself, without notice to or demand upon the Maker, so notify account debtors and other persons obligated on any Collateral. Thereafter, the Maker shall hold any proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by the Maker as trustee for the Holder without commingling the same with other funds of the Maker and shall turn the same over to the Holder in the identical form received, together with any necessary endorsements or assignments. The Holder shall apply the proceeds of collection of accounts, chattel paper, general intangibles, instruments and other Collateral received by the Holder to the Obligations, such proceeds to be immediately credited after final payment in cash or other immediately available funds of the items giving rise to them. In connection with the foregoing, the Maker shall also, at the request of the Holder, enter into a lockbox arrangement and execute whatever depository control agreement(s), and take such other steps, as the Holder may request in order to enable the Holder to have and maintain a perfected security interest in and to the Maker's depository account(s).

8.    **Power of Attorney.**

    A.    Appointment and Powers of the Holder. The Maker hereby irrevocably constitutes and appoints the Holder and any of its officers or agents, with full power of substitution, as its true and lawful attorneys-in-fact with full irrevocable power and authority in the place and stead of the Maker or in the Holder's own name, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments that may be necessary or useful to accomplish the purposes of this Agreement and, without limiting the generality of the foregoing, hereby gives such attorneys the power and right, on behalf of the Maker, without notice to or assent by the Maker, upon the occurrence and during the continuance of an Event of Default, to sell, transfer, pledge, make any agreement with respect to or otherwise dispose of or deal with any of the Collateral in such manner as is consistent with the Florida UCC as fully and completely as though the Holder were the absolute owner thereof for all purposes, and to do, at the Maker's expense, at any time, or from time to time, all acts and things which the Holder deems necessary or useful to protect, preserve or realize upon the Collateral and the Holder's security interest in the Collateral, in order to effect the intent of this Agreement, all at least as fully and effectively as the Maker might do, including: (i) the filing and prosecuting of registration and transfer applications with the appropriate federal, state, local or other agencies or authorities with respect to trademarks, copyrights and patentable inventions and processes, (ii) upon written notice to the Maker, the exercise of voting rights with respect to voting securities, which rights may be exercised, if the Holder so elects, with a view to causing the liquidation of assets of the issuer of any such securities, and (iii) the execution, delivery and recording, in connection with any sale or other disposition of any Collateral, of the endorsements, assignments or other instruments of conveyance or transfer with respect to such Collateral. This power of attorney is a power coupled with an interest and is irrevocable.

    B.    No Duty of the Holder. The powers conferred on the Holder under this Agreement are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Holder shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or

4

agents shall be responsible to the Maker for any act or failure to act, except for the Holder's own gross negligence or willful misconduct.

9.    **Events of Default.** The occurrence of any of the following events shall constitute an event of default under this Agreement (each, an "**Event of Default**"):

        A.    the Maker's failure to pay any amount due to the Holder under this Agreement;

        B.    the Maker's breach of any of its obligations under Section 5.C or Section 7, above;

        C.    the Maker's breach of any other obligation under this Agreement that remains uncured for a period of ten (10) days after the delivery of written notice by the Holder of the breach to the Maker; or

        D.    an "Event of Default" as defined in any of the other Financial Obligation Documents.

10.    **Rights and Remedies.** If an Event of Default shall have occurred and be continuing, the Holder, without any other notice to or demand upon the Maker, shall have in any jurisdiction in which it seeks to enforce this Agreement, in addition to all other rights and remedies, the rights and remedies of a secured party under the Florida UCC and any additional rights and remedies which may be provided to a secured party in any jurisdiction in which any Collateral is located, including the right to take possession of the Collateral, and for that purpose the Holder may, so far as the Maker can authorize, enter upon and remove the Collateral from any place in which it may be located. The Holder may in its discretion require the Maker to assemble all or any part of the Collateral at such location or locations within the jurisdiction of the Maker's principal office or at such other locations as the Holder may reasonably designate. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the Holder shall give to the Maker at least five (5) business days prior written notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition is to be made. The Maker hereby acknowledges that five (5) business days prior written notice of such sale or sales shall be reasonable notice. In addition, the Maker waives any and all rights that it may have to a judicial hearing in advance of the enforcement of any of the Holder's rights and remedies, including its right following an Event of Default to take immediate possession of the Collateral and to exercise its rights and remedies.

11.    **Standards for Exercising Rights and Remedies.** To the extent that applicable law imposes duties on the Holder to exercise remedies in a commercially reasonable manner, the Maker acknowledges and agrees that it is not commercially unreasonable for the Holder to: (i) fail to incur expenses reasonably deemed significant by the Holder to prepare the Collateral for disposition or otherwise to fail to complete raw material or work in process into finished goods or other finished products for disposition; (ii) fail to obtain third party consents for access to the Collateral to be disposed of; (iii) fail to exercise collection remedies against account debtors or other persons obligated on the Collateral or to fail to remove liens or encumbrances on or any adverse claims

against any Collateral; (iv) exercise collection remedies against account debtors and other persons obligated on Collateral directly or through the use of collection agencies and other collection specialists; and (v) to advertise, or hire professionals, in connection with the disposition of Collateral. The Maker acknowledges that the purpose of this Section 11 is to provide non-exhaustive indications of what actions or omissions by the Holder would fulfill the Holder's duties under the Florida UCC or other law of Florida or any other relevant jurisdiction in the Holder's exercise of remedies against the Collateral and that other actions or omissions by the Holder shall not be deemed to fail to fulfill such duties solely on account of not being indicated in this Section 11.

**12.    No Waiver by Holder.** The Holder shall not be deemed to have waived any of its rights or remedies in respect of the Obligations or the Collateral unless it executes a writing specifically waiving such right or remedy and signed by an authorized officer of the Holder. No delay or omission by the Holder in exercising any right or remedy shall operate as a waiver of such right or remedy or any other right or remedy. All rights and remedies of the Holder with respect to the Obligations or the Collateral shall be cumulative and may be exercised singularly, alternatively, successively or concurrently at such time or at such times as the Holder deems expedient.

**13.    Waivers by Maker.** The Maker waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered or other action taken under this Agreement and all other demands and notices of any description. With respect to both the Obligations and the Collateral, the Maker assents to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of or failure to perfect any security interest in any Collateral, to the acceptance of partial payment and the settlement, compromising or adjusting of any of the Obligations, all in such manner and at such time or times as the Holder may deem advisable.

**14.    Marshalling.** The Holder shall not be required to marshal any present or future collateral security (including the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order. To the extent that it lawfully may, the Maker hereby agrees that it will not invoke any law relating to the marshalling of collateral which might cause delay in or impede the enforcement of the Holder's rights and remedies under this Agreement or under any other instrument creating or evidencing any of the Obligations or under which any of the Obligations is outstanding or by which any of the Obligations is secured or payment thereof is otherwise assured, and, to the extent that it lawfully may, the Maker hereby irrevocably waives the benefits of all such laws.

**15.    Proceeds of Dispositions; Expenses.** The Maker shall pay to the Holder on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by the Holder in protecting, preserving or enforcing the Holder's rights and remedies under this Agreement or any of the other Financial Obligation Documents, or in respect of any of the Obligations or any of the Collateral. After deducting all such expenses, the residue of any proceeds of collection or sale or other disposition of the Collateral shall, to the extent actually received in cash, be applied to the payment of the Obligations in such order or preference as the Holder may determine, proper allowance and provision being made for any Obligations not then due. Upon the final payment and satisfaction in full of all of the Obligations and after making any payments

required by Sections 9-608(1)(a)3. or 9-615(1)(c) of the Florida UCC (Fla. Stat. §§679-608(1)(a)3. or 679-615(1)(c), any excess shall be returned to the Maker. In the absence of final payment and satisfaction in full of all of the Obligations, the Maker shall remain liable for any deficiency.

16.    **Overdue Amounts**. Until paid, all amounts due and payable by the Maker under this Agreement shall be a debt secured by the Collateral and shall bear, whether before or after judgment, interest at the Default Rate.

17.    **Governing Law; Consent to Jurisdiction; Service**. This Agreement and all of the other Financial Obligation Documents shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its principles of conflict of laws. Any suit, action or proceeding arising out of or relating in any way to this Agreement or any of the other Financial Obligation Documents (a "**Proceeding**") shall be brought only in the Duval County Circuit Court of the State of Florida or the United States District Court for the Middle District of Florida. The Maker: (i) consents to the exclusive jurisdiction of such court and of its respective appellate courts in any Proceeding; (ii) irrevocably waives, to the fullest extent permitted by law, any objection that it may now or in the future have to the laying of the venue of any Proceeding in any such court or that any Proceeding that is brought in any such court has been brought in an inconvenient forum; (iii) agrees not to attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court; and (iv) agrees not to bring any Proceeding in any other court. Process in any Proceeding may be served on the Maker anywhere in the world, whether within or without the jurisdiction of any such court. Without limiting the foregoing, the Maker agrees that service of process by hand delivery, overnight courier or certified mail, postage prepaid, return receipt requested, at the address set forth in the introduction to this Agreement shall be deemed effective service of process on the Maker.

18.    **WAIVER OF JURY TRIAL; NO PUNITIVE DAMAGES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE MAKER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, OR ANY OF THE OTHER FINANCIAL OBLIGATION DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF THE MAKER WITH RESPECT TO THIS AGREEMENT AND THE OTHER FINANCIAL OBLIGATION DOCUMENTS. THIS PROVISION IS A MATERIAL INDUCEMENT TO THE HOLDER'S AGREEMENT TO MAKE THE FINANCIAL ACCOMMODATION THAT FORMS THE BASIS OF THE NOTE. IN ADDITION, THE MAKER SHALL NOT HAVE A REMEDY OF PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE HOLDER OR ANY AFFILIATE IN ANY DISPUTE ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER FINANCIAL OBLIGATION DOCUMENTS, AND THE MAKER HEREBY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES IT HAS NOW OR THAT MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH DISPUTE.**

19.    **Costs of Enforcement**.  The Maker shall pay, upon demand, any costs (including reasonable attorneys' fees and disbursements and court costs) incurred by the Holder in enforcing

its rights under this Agreement and the other Financial Obligation Documents, including the full and timely satisfaction of all of the Obligations.

20.    **Miscellaneous.**    This Agreement shall be binding upon the Maker and its respective successors and assigns, and shall inure to the benefit of the Holder and its successors and assigns. If any term of this Agreement shall be held to be invalid, illegal or unenforceable, the validity of all other terms shall in no way be affected and this Agreement shall be construed and be enforceable as if such invalid, illegal or unenforceable term had not been included.  This Agreement may not be altered, modified, supplemented or amended except in a writing signed by the Holder and the Maker and may be assigned by the Holder upon written notice to the Maker.  The Maker acknowledges receipt of a copy of this Agreement.  Whenever any form of the term "including" is used in this Agreement it shall mean "including without limitation."

    **IN WITNESS WHEREOF**, intending to be legally bound, the Parties has caused this Agreement to be duly executed as of the Effective Date.


WITNESS:                                        ABLITT SCOFIELD, A PROFESSIONAL
                                                CORPORATION



_____        By: _____

                                        _____,
                                        an authorized person



_____        By: _____

                                        _____,
                                        an authorized person



8

# EXHIBIT C

RI SOS   Filing Number: 201211795820   Date: 11/01/2012 11:13 AM

# UCC-1 Form

---

## FILER INFORMATION
*Full name:*  S. MICHAEL LEVIN, ESQ.    *Phone:*  401-228-6339

## CONTACT INFORMATION
*Contact name:*  S. MICHAEL LEVIN, ESQ.
*Street #1:*  55 DORRANCE STREET, SUITE 200
*City:*  PROVIDENCE    *State:*  RI    *ZIP:*  02903    *Country:*  USA
*Notification Method:*  E-MAIL    *Email:*  MLEVIN@SMLEVINLAW.COM

---

## DEBTOR INFORMATION
*Org. Name:*  ABLITT SCOFIELD, A PROFESSIONAL CORPORATION
*Org. Type:*  CORPORATION    *Jurisdiction:*  RI    *Org. ID:*  126742
*Mailing Address1:*  304 CAMBRIDGE ROAD
*City:*  WOBURN    *State:*  MA    *ZIP:*  01810    *Country:*  USA

---

## SECURED PARTY INFORMATION
*Org. Name:*  LENDER PROCESSING SERVICES, LLC
*Mailing Address1:*  601 RIVERSIDE AVENUE, T-2
*City:*  JACKSONVILLE    *State:*  FL    *ZIP:*  32204    *Country:*  USA

---

## TRANSACTION TYPE:  STANDARD

## COLLATERAL

All personal and fixture property of every kind and nature including all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, accounts receivable, all books, records and data relating to accounts receivable, insurance claims and proceeds, and all general intangibles (including all patents and patent rights, trademarks, service marks and trademark and service mark rights, together with the goodwill appurtenant thereto, and all other intellectual property and payment intangibles).

UCC FILING INFORMATION                                    http://ucc.state.ri.us/psearch/filinghistory.asp?DB=&UCC1=214098

Case 16-11161-BLS    Doc 1623    Filed 12/17/18    Entered 12/05/18 14:17    Desc Exhibit
5  ServiceLink Proof of Claim    Page 29 of 34

# Filing History

<div style="background:#1a5276;color:white;text-align:center;">Click here to file a UCC-11 (Request Certified Copy(s) and Listings)</div>

## UCC-1

**UCC File Number:** 201211795820
**Filing Date:** 11/1/2012 11:13:00 AM

**File(s):** 201211795820_1.pdf, 2 pgs, 5190 bytes

☐ **Request Certified Copy**

### Debtor(s)

| | |
|---|---|
| ABLITT SCOFIELD, A PROFESSIONAL CORPORATION<br>304 CAMBRIDGE ROAD<br>WOBURN MA 01810<br>State of Inc: RI  Corp Num: 126742  Corp Type:<br>CORPORATION | |

### Secured Parties

| | |
|---|---|
| LENDER PROCESSING SERVICES, LLC<br>601 RIVERSIDE AVENUE, T-2<br>JACKSONVILLE FL 32204 | |

### Collateral Information

```
All personal and fixture property of
every kind and nature including all
goods (including inventory, equipment
and any accessions thereto),
```

## UCC-3 AMENDMENT

**UCC File Number:** 201414241250
**Filing Date:** 9/3/2014 3:49:00 PM

**File(s):** 201414241250_1.pdf, 2 pgs, 5663 bytes

☐ **Request Certified Copy**

### Debtor(s)

| | |
|---|---|
| ABLITT SCOFIELD, A PROFESSIONAL CORPORATION<br>304 CAMBRIDGE ROAD<br>WOBURN MA 01810<br>State of Inc: RI  Corp Num: 126742  Corp Type:<br>CORPORATION | CONNOLLY, GEANEY, ABLITT AND WILLARD, A<br>PROFESSIONAL CORPORATION<br>304 CAMBRIDGE ROAD<br>WOBURN MA 01801 |

### Secured Parties

| | |
|---|---|
| LENDER PROCESSING SERVICES, LLC<br>601 RIVERSIDE AVENUE, T-2<br>JACKSONVILLE FL 32204 | |

### Collateral Information

```
All personal and fixture property of
every kind and nature including all
goods (including inventory, equipment
and any accessions thereto),
```

## UCC-3 ASSIGNMENT

**UCC File Number:** 201414241520
**Filing Date:** 9/3/2014 4:04:00 PM

**File(s):** 201414241520_1.pdf, 1 pgs, 4661 bytes

☐ **Request Certified Copy**

### Debtor(s)

| | |
|---|---|
| ABLITT SCOFIELD, A PROFESSIONAL CORPORATION<br>304 CAMBRIDGE ROAD<br>WOBURN MA 01810<br>State of Inc: RI   Corp Num: 126742   Corp Type:<br>CORPORATION | CONNOLLY, GEANEY, ABLITT AND WILLARD, A<br>PROFESSIONAL CORPORATION<br>304 CAMBRIDGE ROAD<br>WOBURN MA 01801 |

### Secured Parties

| | |
|---|---|
| LENDER PROCESSING SERVICES, LLC<br>601 RIVERSIDE AVENUE, T-2<br>JACKSONVILLE FL 32204 | |

### Assignee

| | |
|---|---|
| SERVICELINK NLS, LLC<br>1400 CHERRINGTON PARKWAY<br>MOON TOWNSHIP PA 15108 | |

Click to close Filing History Window

# EXHIBIT D

**ASSIGNMENT OF PROMISSORY NOTE AND AGREEMENT,
SECURITY AGREEMENT, UCC FINANCING STATEMENTS
AND
UNCONDITIONAL PERSONAL GUARANTY**

1. <u>Assignment</u>. For value received, the undersigned, Black Knight Financial Technology Solutions, LLC f/k/a BKIS, LLC more f/k/a Lender Processing Services, LLC ("Assignor"), hereby sells, assigns, transfers and conveys to ServiceLink NLS, LLC ("Assignee") all of Assignor's right, title and interest in all loan documents and other evidence of the indebtedness related to and in connection with the indebtedness of Ablitt Scofield, a Professional Corporation to Assignor and certain of its affiliates in the agreed-upon amount of $4,148,027, including without limitation, the following documents: (i) that certain Promissory Note and Agreement dated October 15, 2012, issued to Assignor by Ablitt Scofield, a Professional Corporation, in the stated principal amount $4,148,027 (the "Note"); (ii) that certain Security Agreement dated October 15, 2012, issued to Assignor by Ablitt Scofield, a Professional Corporation (the "Security Agreement"); (iii) all UCC financing statements filed with the Rhode Island Secretary of State (the "UCC Statements"); and (iv) that certain Unconditional Personal Guaranty dated October 15, 2012, made by Steven A. Ablitt, an individual, in favor of Assignor (the "Guaranty"; collectively, the Note, Security Agreement, UCC Statements and Guaranty, the "Loan Documents") As of March 21, 2014, the principal balance due on the Note was $3,283,552.97.

2. <u>Assignor's Representations</u>. Assignor represents and warrants to Assignee as follows:

   (a) Assignor has good, valid and marketable title to its interest in the Loan Documents, free and clear from all security interests or encumbrances.

   (b) Assignor has not assigned, pledged, hypothecated or otherwise encumbered its interest in the Loan Documents. Upon delivery of this duly executed assignment to Assignee pursuant to this assignment, Assignee will acquire valid title thereto, free and clear of any security interests.

3. <u>Assignor's Authorization</u>. Assignor hereby authorizes Assignee to file with the Rhode Island Secretary of State any required documents to effectuate the assignment of the UCC Statements, including but not limited to, UCC-3 forms.

4. <u>Acceptance by Assignee</u>. Assignee hereby accepts this assignment on the terms and conditions set forth herein.

IN WITNESS WHEREOF, the parties have executed this Assignment of Promissory Note and Agreement, Security Agreement, UCC Financing Statements and Unconditional Personal Guaranty to be effective as of the 18th day of August, 2014.

*(Signature Page Immediately Follows)*

{W1120124 1;}1

**ASSIGNEE**

ServiceLink NLS, LLC

By: _____

Name: _____
Christina Ling

Title: _____SVP_____


**ASSIGNOR**

Black Knight Financial Technology
Solutions, LLC

By: _____

Name: _____

Title: _____

## ALLONGE

 THIS ALLONGE is made to that certain Promissory Note and Agreement dated October 15, 2012 in the amount of $4,148,027 (the "Note") from Ablitt Scofield, P.C., the current holder of which is Black Knight Financial Technology Solutions, LLC.f/k/a BKIS, LLC more f/k/a LPS Processing Services, LLC. It is intended that this Allonge be attached to and made a permanent part of the Note.

Pay to the order of ServiceLink NLS, LLC, without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever, except as expressly set forth in that certain Assignment of Promissory Note and Agreement, Security Agreement, UCC Financing Statements and Unconditional Personal Guaranty dated August 18, 2014, between Black Knight Financial Technology Solutions, LLC and ServiceLink NLS, LLC.


Black Knight Financial Technology Solutions, LLC


By: _Shelly Leonard_

Print Name: _Shelley Leonard_

Date: _8/18/14_